**WILDE & ASSOCIATES**
Gregory L. Wilde, Esq.
Nevada Bar No. 004417
212 South Jones Boulevard
Las Vegas, Nevada 89107
Telephone: 702 258-8200
bk@wildelaw.com
Fax: 702 258-8787
and
MARK S. BOSCO, ESQ.
Arizona Bar No. 010167
TIFFANY & BOSCO, P.A.
2525 East Camelback Road, Suite 300
Phoenix, Arizona 85016
Telephone: (602) 255-6000

Wells Fargo Bank, N.A.
10-71293

Electronically Filed on _____

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In Re:<br><br>Quy K. Nguyen<br><br><br><br><br>Debtor. | BK Case No.: 10-13443-bam<br><br>EX PARTE APPLICATION FOR AN ORDER PURSUANT TO 362 (c)(3)(A)<br><br>Date:<br>Time:<br><br>Chapter 13 |

## <u>MOTION FOR RELIEF FROM AUTOMATIC STAY</u>

Wells Fargo Bank, N.A., Secured Creditor herein, ("Secured Creditor" or "Movant" hereinafter), requests from this Court an Order Confirming that the Automatic Stay of 11 U.S.C § 362 has not arisen with respect to the Debtor due to the multiple filings as evidenced below. That on or about March 3, 2010, the above named Debtor filed this instant Chapter 13 Petition in Bankruptcy with the Court.

This motion is supported by the following Memorandum of Points and Authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

1.     Secured Creditor is the current payee of a promissory note dated April 14, 2000 in the principal sum of $78,663.00 ("Promissory Note" herein), secured by a Real Property Trust Deed of same date ("Trust Deed" herein) upon property generally described as 1881 W. Alexander Rd. # 2087, North Las Vegas, NV 89032, and legally described as follows:

The land referred to herein is situated in the State of Nevada, County of CLARK, described as follows:

A CONDOMINIUM COMPOSED OF:

PARCEL I (COMMON ELEMENT):

An undivided 1/8th interest as tenant-in-common in the Common Element Phase 6 of VILLAS AT HIDDEN CANYON - UNIT 2 (a common interest condominium development), as shown by map thereof on file recorded December 31, 1998 in Book 87 of Plats, Page 70, and amended by Certificates of Amendement recorded APRIL 20, 1999 in Book 990420, as Document No. 00873, Official Records, in the Office of the County Recorder of Clark County, Nevada.

EXCEPTING THEREFROM THE FOLLOWING:
 All Living Units in Phase 6 of VILLAS AT HIDDEN CANYON-UNIT 2 (a common interest condominium development), recorded in the Office of the County Recorder of Clark County, Nevada, on December 31, 1998 in Book 87 of Plats, Page 70.

AND RESERVING THEREFROM:

The right to possesion of all those areas designated as Limited Common Element as shown upon the Condominium Plat referred to above;

AND FURTHER RESERVING THEREFROM for the benefit of the Owners of Condominiums in Phases 1 through 5 and 7 through 12, non-exclusive easememtnson, over, and under the Common Elements and Private drives and P.U.E., as defined and shown upon the Condominium plat referred to above for ingress and egress, and subject to the terms and as more particularly set forth in the Declaration of Covenants, Conditions and Restrictions recorded May 23, 1997 in Book 970523, as Document No. 01065, and by first Amendment to Declaration recorded july 26, 1999 in Book 990726 as Document No. 01462, and by First Supplement to Exhibit "B" to Declaration No. 01081 (hereafter "Declaration"), excepting Buldings and any portion therof which is designated as a Limited Common Element.

PARCEL II (CONDOMINIUM UNIT):
Condominium Unit 2087, in Building V, as shown upon the Condominium Plat referred to above.

PARCEL III (LIMITED COMMON ELEMENT) :
The exclusive right to use, possession, and occupancy of those portions of the Common Element being described upon the Plat and in the "Declaration" as Porches, Balconies. Patios. and/or Exterior Stairways, HVAC and Parking Stall (Limited Common Element), which are appurtenant to and for the exclusive use of Parcel II.

PARCEL IV (PHASED AREAS) :
A non-exclusive easement for ingress and egress, over and under the Common Elements and Private Drives and P.U.E. of Phases 1 through 5 and 7 through 12, which easement is appurtenant to Parcels I, II, and III described above. This easement shall be effective only until recordation prior to expiration of the right to annex by a Declaration of Annexation declaring Phases 1 through 5 and 7 through 12 to be subject to the Declaration to which reference is heretofore made or a separate Declaration, which requires the Owners of a Condominium in Phases 1 through 5 and 7 through 12 to be members of the Association.

PARCEL V:
A non-exclusive easement for ingress and egress, over and under the Common Elements and Private Drives and P.U.E of the Amended Plat of Villas at Hidden Canyon - Unit 1 (a common interest condominium development) as shown by map thereof on file in Book 81 of Plats, Page 70 and in Book 85 of Plats, Page 92, in the Office of the County Recorder of Clark County, Nevada, which easement is appurtenant to Parcels I, II, and III described above.

PARCEL VI (COMMON RECREATIONAL AREA) :
A non-exclusive easement on and over the Common Recreational Area (Common Element "A" (CE "A") as shown on the Amended Plat of Villas Hidden Canyon - Unit 1 (a common interest condominium development) as shown by map thereof on file in Book 81 of Plats, Page 70, in the Office of the County Recorder of Clark County, Nevada) for access, use, occupancy, enjoyment, ingress, egress, and use of the amenities located thereon, subject to the terms and provisions of the Declaration to which reference is heretofore made. This easement is appurtenant to Parcels I, II, and III herein described. The Common Recreational Area is for the use of Owners and guests of the Units and are subject to the Declaration rules and regulations of the Association and are not for the use of the general public.

("subject property" herein).

Secured Creditor is informed and believes, and, based upon such information and belief, alleges that title to the subject property is currently vested in the name of Debtor and that the Debtor is in default of the loan obligations.

    2.      True and correct copies of the Note and Deed of Trust are attached hereto as Exhibit's "A" and "B" and incorporated herein by reference for all purposes.

    3.      The debtor filed the instant case on March 3, 2010.

4.    Prior to filing of the present case, the Debtor filed an additional case within a one-year period as follows:  Chapter: 13, Case Number: 09-32039, filed November 23, 2009, District of Nevada, dismissed on January 27, 2010.

5.    Prior to filing of the present case, the Debtor filed an additional case within a one-year period as follows:  Chapter: 13, Case Number: 09-30385, filed October 28, 2009, District of Nevada, dismissed on January 26, 2010.

6.    Secured Creditor requests that the Court enter an Order confirming that there is no Automatic Stay affecting Secured Creditor with respect to the Debtor.

7.   Further, Bankruptcy Code Section 362(j) allows as follows:

On request of a party in interest, the court shall issue an order under subjection (c) confirming that the automatic stay has been terminated.

8.   Additionally, Bankruptcy Code Section 362 (4)(A)(i) and (ii) states as follows:

if a single or joint case is filed by or against a debtor who is an individual under this title, and if 2 or more single or joint cases of the debtor were pending within the previous year but were dismissed, other than a case refiled under section 707 (b), the stay under subsection (a) **shall not go into effect upon the filing of the later case; and**

**(ii)    on request of a party in interest, the court shall promptly enter an order confirming that no stay is in effect;** *(emphasis added.)*

(B) if, within 30 days after the filing of the later case, a party in interest requests the court may order the stay to take effect in the case as to any or all creditors (subject to such conditions or limitations as the court may impose), after notice and a hearing, only if the party in interest demonstrates that the filing of the later case is in good faith as to the creditors to be stayed;

9.    As stated above, Debtor was a Debtor in more than 2 prior cases pending within a preceding one year period of time prior to the institution of the present case, and that those prior cases were dismissed. In fact, the Debtor was a Debtor in multiple prior cases pending within a preceding one

year period of time prior to the institution of the present case, and all of those prior cases were dismissed.

10.    The Debtor did not seek an order to extend the automatic stay.

11.    Secured Creditor respectfully requests an order from the Court confirming that the Automatic Stay never arose as to Secured Creditor, and that Secured Creditor may proceed with collection on the note, including but not limited to foreclosure and an action to recover possession of the subject property described herein.

12.    WHEREFORE, for all of the foregoing reasons, Secured Creditor, Wells Fargo Bank, NA requests the Court to enter an Order confirming that the Automatic Stay never arose and is otherwise terminated, with respect to the Debtor and the subject property described in this motion.


Respectfully submitted, this _____9th_____ day of April 2010.

WILDE & ASSOCIATES

By: _____
Gregory L. Wilde, Esq.
Attorney for Secured Creditor
212 S. Jones Boulevard
Las Vegas, NV 89107


Copies of the foregoing mailed this _____9th_____ day of April 2010

        Boris A. Avramski
        bkhelpvegas@yahoo.com
        Attorney for Debtor

        Lenard E Schwartzer
        trustee@s-mlaw.com
        Trustee

THIS DOCUMENT IS BEING RE-RECORDED TO ADD DATE ONLY

20000414
03366
20000405
.01146

C007288871

When Recorded Mail to:
First Security Bank
2820 W. Charleston #B15
Las Vegas NV 89102
Attn: Carl Johnson
99-08-0081 JC

RE-RECORDED

139-09-119-031

10

[Space Above This Line For Recording Data]

State of Nevada

## DEED OF TRUST

FHA Case No.
332-3428925-731

THIS DEED OF TRUST ("Security Instrument") is made on April 14, 2000
The grantor is QUY K NGUYEN and THOU C NGUON-NGUYEN, husband and wife

("Borrower").

The trustee is Stewart Title ("Trustee").
The beneficiary is First Security Bank, N.A. , which is
organized and existing under the laws of The United States of America , and whose address is
2820 W. Charleston Blvd., Suite B15 Las Vegas, NV 89102 ("Lender").
Borrower owes Lender the principal sum of Seventy-Eight Thousand, Six Hundred Sixty-Three
and No/100 -------------------- Dollars (U.S. $ 78,663.00). This debt is
evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly
payments, with the full debt, if not paid earlier, due and payable on May 1, 2030
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and
all renewals, extensions and modifications; (b) the payment of all other sums, with interest, advanced under paragraph
6 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements
under this SEcurity Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee,
in trust, with power of sale, the following described property located in CLARK
County, Nevada:

See Exhibit "A" attached hereto and made apart thereof:

which has the address of    1881 W ALEXANDER RD #2087                    NORTH LAS VEGAS
                                        [Street]                                                      [City]
Nevada  89032    [Zip Code]    ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances,
rents, royalties, mineral, oil and gas rights and profits, water rights and stock and all fixtures now or hereafter a part of the
property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this
Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and
convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend
generally the title to the Property against all claims and demands, subject to any encumbrances of record.

FHA Nevada Deed of Trust - 12/89
HUD-92103T-1  R 2/99    Page 1 of 4

EXHIBIT A



THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:

UNIFORM COVENANTS.

1. Payment of Principal, Interest and Late Charge. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2. Monthly Payment of Taxes, Insurance and Other Charges. Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under Paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Sec. 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. Application of Payments. All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

FIRST, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

SECOND, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

THIRD, to interest due under the Note;

FOURTH, to amortization of the principal of the Note; and

FIFTH, to late charges due under the Note.

4. Fire, Flood and Other Hazard Insurance. Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in Paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in Paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6. Condemnation. The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in Paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in Paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7. Charges to Borrower and Protection of Lender's Rights in the Property. Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8. Fees. Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:
(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or
(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:
(i) All or part of the property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and
(ii) The property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's right in the case of payment defaults to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that should this Security Instrument and the Note secured thereby not be eligible for insurance under the National Housing Act within sixty days form the date hereof, Lender may, at its option and notwithstanding anything in Paragraph 9, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to sixty days from the date hereof, declining to insure this Security Instrument and the Note secured thereby, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note of this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceeding within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9.b. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the term of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in the paragraph 16. "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

**NON-UNIFORM COVENANTS**

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 16.

Lender shall not be required to enter upon, take control of or maintain the Property, before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

18. **Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold, and shall cause such notice to be recorded in each county in which any part of the Property is located. Lender shall mail copies of the notice as prescribed by applicable law to Borrower and to the persons prescribed by applicable law. Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law. After the time required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secreatry may Iavoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act")(12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

19. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty and without charge to the person or persons legally entitled to it. Such person or persons shall pay recordation costs.

20. **Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

21. **Waiver of Homestead.** Borrower waives all right of homestead exemption in the Property.

22. **Assumption Fee.** If there is an assumption of this loan, Lender may charge an assumption fee of U.S. $500.00.

**Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were in a part of this Security Instrument. [Check applicable box(es)]

| [X] Condominium Rider | [ ] Graduated Payment Rider | [ ] Growing Equity Rider |
| [ ] Planned Unit Development Rider | [ ] Other [Specify] | [X] Adjustable Rate Rider |

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_____ (Seal)
QUY K NGUYEN                -Borrower

_____ (Seal)
THOU C NGUON-NGUYEN         -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

Page 4 of 4

**STATE OF NEVADA,**
On this **14th** day of **April** , **2000** , personally appeared before me, the undersigned, a notary public in and for the County and State aforesaid.                County ss:    **CLARK**
**QUY K NGUYEN and THOU C NGUON-NGUYEN**
known to me to be the person described in and who executed the within and foregoing instrument, and who acknowledged to me that ~~they~~ executed the same freely and voluntarily and for the uses and purposes therin mentioned.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal at my office in said county of , the day and year in this Certificate first above written.

My Commission expires: 2-4-03

NANCY LOBECK
Notary Public, State of Nevada
Appointment No. 99-51475-1
My Appt. Expires Feb. 4, 2003

_____
Notary Public
County of Clark , State of Nevada

FHANVTDD

2000041 14
2000 7005
.01146

WHEN RECORDED MAIL TO:


ATTN: **Carl F. Johnson**


# FHA MULTISTATE ADJUSTABLE RATE RIDER

THIS ADJUSTABLE RATE RIDER is made this **14th** day of **April, 2000** , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to **First Security Bank, N.A.** (the "Lender") of the same date and covering the property described in the Security Instrument and located at: **1881 W ALEXANDER RD #2087, NORTH LAS VEGAS, NV 89032**

[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in this Security Instrument, Borrower and Lender further covenant and agree as follows:

INTEREST RATE AND MONTHLY PAYMENT CHANGES

(A) **Change Date**
The interest rate may change on the first day of **July, 2001** , and that day of each succeeding year. "Change Date" means each date on which the interest rate could change.

(B) **The Index**
Beginning with the first Change date, the interest rate will be based on an Index. "Index" means the weekly average yield on United State Treasury Securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. "Current Index" means the most recent Index figure available 30 days before the Change Date. If the Index (as defined above) is no longer available, Lender will use as a new Index any index prescribed by the Secretary. As used in this Rider, "Secretary" means the Secretary of Housing and Urban Development or his or her designee. Lender will give Borrower notice of the new Index.

(C) **Calculation of Interest Rate Changes**
Before each Change Date, Lender will calculate a new interest rate by adding a margin of **Two and Three-Fourths** percentage points ( **2.7500** %) to the current Index and rounding the sum to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Paragraph (D) of this Rider, this rounded amount will be the new interest rate until the next Change Date.

(D) **Limits on Interest Rate Changes**
The interest rate will never increase or decrease by more than one percentage point (1.0%) on any single Change Date. The interest rate will never be more than five percentage points (5.0%) higher or lower than the initial interest rate.

(E) **Calculation of Payment Change**
If the interest rate changes on a Change Date, Lender will calculate the amount of monthly payment of principal and interest which would be necessary to repay the unpaid principal balance in full at the maturity date at the new interest rate through substantially equal payments. In making such calculation, Lender will use the unpaid principal balance which would be owed on the Change Date if there had been no default in payment on the Note, reduced by the amount of any prepayments to principal. The result of this calculation will be the amount of the new monthly payment of principal and interest.

Page 1 of 2 Pages
ITEM 6592 (9104) IT 2/99
**0007268871**



RDFHA

**(F)  Notice of Changes**

Lender will give notice to Borrower of any change in the interest rate and monthly payment amount.  The notice must be given at least 25 days before the new monthly payment amount is due, and must set forth (i) the date of the notice, (ii) the Change Date, (iii) the old interest rate, (iv) the new interest rate, (v) the new monthly amount, (vi) the Current Index and date it was published, (vii) the method of calculating the change in monthly payment amount, and (viii) any other information which may be required by law from time to time.

**(G)  Effective Date of Changes**

A new interest rate calculated in accordance with Paragraphs (C) and (D) of this Rider will become effective on the Change Date.  Borrower shall make a payment in the new monthly amount beginning on the first payment date which occurs at least 25 days after Lender has given Borrower the notice of changes required by Paragraph (F) of this Rider.  Borrower shall have no obligation to pay any increase in the monthly payment amount calculated in accordance with Paragraph (E) of this Rider for any payment date occurring less than 25 days after Lender has given the required notice.  If the monthly payment amount claculated in accordance with Paragraph (E) of this Rider decrease, but Lender failed to give timely notice of the decrease and Borrower made any monthly payment amounts exceeding the payment amount which should have been stated in a timely notice, then Borrower has the option to either (i) demand the return to Borrower of any excess payment, with interest thereon at the Note rate (a rate equal to the interest rate which should have been stated in a timely notice), or (ii) request that any excess payment, with interest thereon at the Note rate, be applied as payment of principal.  Lender's obligation to return any excess payment with interest on demand is not assignable even if the Note is otherwise assigned before the demand for return is made.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 and 2 of this Adjustable Rate Rider.

_____  (Seal)
                                          Borrower

_____  (Seal)
                                          Borrower

_____  (Seal)
QUY K NGUYEN                              Borrower

_____  (Seal)
                                          Borrower

_____  (Seal)
THOU C NGUON-NGUYEN                       Borrower

_____  (Seal)
                                          Borrower

_____  (Seal)
                                          Borrower

I.T.  2/97                (page 2 of 2 pages)                RIDFHA2

0007288871



# FHA CONDOMINIUM RIDER

THIS CONDOMINIUM RIDER is made this **14th** day of ·April, ·2000· and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to

## First Security Bank, N.A.

("Lender") of the same date and covering the property described in the Security Instrument and located at:

## 1881 W ALEXANDER RD #2087, NORTH LAS VEGAS, NV  89032

[Property Address]

The Property Address includes a unit in, together with an undivided interest in the common elements of, a condominium project known as:

## Villas at Hidden Canyon – Unit 2 (dba:  Villagio)

[Name of Condominium Project]

("Condominium Project"). If the owners association or other entity which acts for the Condominium Project ("Owners Association") holds title to property for the benefit or use of its members or shareholders, the Property also includes Borrower's interest in the Owners Association and the uses, proceeds and benefits of Borrower's interest.

CONDOMINIUM  COVENANTS.  In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A.  So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring all property subject to the condominium documents, including all improvements now existing or hereafter erected on the Property, and such policy is satisfactory to Lender and provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire and other hazards included within the term "extended coverage," and loss by flood, to the extent required by the Secretary, then: (i) Lender waives the provision in Paragraph 2 of this Security Instrument for the monthly payment to Lender of one-twelfth of the yearly premium installments for hazard insurance on the Property, and (ii) Borrower's obligation under Paragraph 4 of this Security Instrument to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owner's Association policy. Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage and of any loss occurring from a hazard. In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the condominium unit or to the common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to the entity legally entitled thereto.

B.  Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the condominium project.

C.  If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Condominium Rider.



_____ (SEAL)
**QUY K NGUYEN**                              Borrower

_____ (SEAL)
**THOU C NGUON-NGUYEN**              Borrower

FHACNRID



# LEGAL DESCRIPTION

Order No.:

The land referred to herein is situated in the State of Nevada, County of CLARK, described as follows:

A CONDOMINIUM COMPOSED OF:

PARCEL I (COMMON ELEMENT):

An undivided 1/8th interest as tenant-in-common in the Common Element Phase 6 of VILLAS AT HIDDEN CANYON - UNIT 2 (a common interest condominium development), as shown by map thereof on file recorded December 31, 1998 in Book 87 of Plats, Page 70, and amended by Certificates of Amendment recorded APRIL 20, 1999 in Book 990420, as Document No. 00644 and AUGUST 16, 1999 in Book 990816, as Document No. 00873, Official Records, in the Office of the County Recorder of Clark County, Nevada.

EXCEPTING THEREFROM THE FOLLOWING:

All Living Units in Phase 6 of VILLAS AT HIDDEN CANYON - UNIT 2 (a common interest condominium development), recorded in the Office of the County Recorder of Clark County, Nevada, on December 31, 1998 in Book 87 of Plats, Page 70.

AND RESERVING THEREFROM:

The right to possession of all those areas designated as Limited Common Element as shown upon the Condominium Plat referred to above;

AND FURTHER RESERVING THEREFROM for the benefit of the Owners of Condominiums in Phases 1 through 5 and 7 through 12, non-exclusive easements on, over, and under the Common Elements and Private Drives and P.U.E., as defined and shown upon the Condominium Plat referred to above for ingress and egress, and subject to the terms and as more particularly set forth in the Declaration of Covenants, Conditions and Restrictions recorded May 23, 1997 in Book 970523, as Document No. 01065, and by First Amendment to Declaration recorded July 26, 1999 in Book 990726 as Document No. 01462, and by First Supplement to Exhibit "B" to Declaration recorded August 9, 1999 in Book 990809, as Document No. 01081 (hereafter "Declaration"), excepting Buildings and any portion thereof which is designated as a Limited Common Element.

<p style="text-align:center">Continued on next page</p>

**STEWART TITLE**
Guaranty Company



LEGAL DESCRIPTION - continued

PARCEL II (CONDOMINIUM UNIT):

Condominium Unit 2087, in Building V, as shown upon the Condominium Plat referred to above.

PARCEL III (LIMITED COMMON ELEMENT):

The exclusive right to use, possession, and occupancy of those portions of the Common Element being described upon the Plat and in the "Declaration" as Porches, Balconies, Patios, and/or Exterior Stairways, HVAC and Parking Stall (Limited Common Element), which are appurtenant to and for the exclusive use of Parcel II.

PARCEL IV (PHASED AREAS):

A non-exclusive easement for ingress and egress, over and under the Common Elements and Private Drives and P.U.E. of Phases 1 through 5 and 7 through 12, which easement is appurtenant to Parcels I, II, and III described above. This easement shall be effective only until recordation prior to expiration of the right to annex by a Declaration of Annexation declaring Phases 1 through 5 and 7 through 12 to be subject to the Declaration to which reference is heretofore made or a separate Declaration, which requires the Owners of a Condominium in Phases 1 through 5 and 7 through 12 to be members of the Association.

PARCEL V:

A non-exclusive easement for ingress and egress, over and under the Common Elements and Private Drives and P.U.E of the Amended Plat of Villas at Hidden Canyon - Unit 1 (a common interest condominium development) as shown by map thereof on file in Book 81 of Plats, Page 70 and in Book 85 of Plats, Page 92, in the Office of the County Recorder of Clark County, Nevada, which easement is appurtenant to Parcels I, II, and III described above.

PARCEL VI (COMMON RECREATIONAL AREA):

A non-exclusive easement on and over the Common Recreational Area (Common Element "A" (CE "A") as shown on the Amended Plat

Continued on next page

-2-

20000414
.02396
20001005
.01146

**LEGAL DESCRIPTION - continued**

of Villas Hidden Canyon - Unit 1 (a common interest condominium
development) as shown by map thereof on file in Book 81 of
Plats, Page 70, in the Office of the County Recorder of Clark
County, Nevada) for access, use, occupancy, enjoyment, ingress,
egress, and use of the amenities located thereon, subject to
the terms and provisions of the Declaration to which reference
is heretofore made.  This easement is appurtenant to Parcels I,
II, and III herein described.  The Common Recreational Area is
for the use of Owners and guests of the Units and are subject
to the Declaration rules and regulations of the Association and
are not for the use of the general public.

-3-

**RE-RECORDED**

CLARK COUNTY, NEVADA
JUDITH A. VANDEVER, RECORDER
RECORDED AT REQUEST OF:
STEWART TITLE OF NEVADA

10-05-2000 15:05  BJB          10
OFFICIAL RECORDS
BOOK: 20001005 INST:    01146

FEE:      16.00  RPTT:          .00

CLARK COUNTY, NEVADA
JUDITH A. VANDEVER, RECORDER
RECORDED AT REQUEST OF:

STEWART TITLE OF NEVADA              10
04-14-2000 16:19   VS1
OFFICIAL RECORDS
BOOK 20000414   INST:  02396

FEE:      16.00  RPTT:          .00

THIS DOCUMENT IS BEING RE-RECORDED TO ADD DATE ONLY

20000414

20000405
.01146

d007208071

When Recorded Mail to:
First Security Bank
2820 W. Charleston #B15
Las Vegas NV 89102
Attn: Clark Johnson
[signature]

RE-RECORDED

(10)

[Space Above This Line For Recording Data]

State of Nevada

# DEED OF TRUST

FHA Case No.
332-3428925-731

THIS DEED OF TRUST ("Security Instrument") is made on April 14, 2000
The grantor is   QUY K NGUYEN and THOU C NGUON-NGUYEN, husband and wife
                                                           ("Borrower").
The trustee is   Stewart Title                                                      ("Trustee").
The beneficiary is   First Security Bank, N.A.                               , which is
organized and existing under the laws of   The United States of America      , and whose address is
2820 W. Charleston Blvd., Suite B15   Las Vegas, NV   89102                    ("Lender").
Borrower owes Lender the principal sum of   Seventy-Eight Thousand, Six Hundred Sixty-Three
and No/100 ------------------ Dollars (U.S. $     78,663.00). This debt is
evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly
payments, with the full debt, if not paid earlier, due and payable on   May 1, 2030            .
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and
all renewals, extensions and modifications; (b) the payment of all other sums, with interest, advanced under paragraph
6 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements
under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee,
in trust, with power of sale, the following described property located in   CLARK
County, Nevada:

See Exhibit "A" attached hereto and made apart thereof:

which has the address of    1881 W ALEXANDER RD #2087              NORTH LAS VEGAS
                                                                      [City]
Nevada   89032    [Zip Code]    ("Property Address"):

     TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances,
rents, royalties, mineral, oil and gas rights and profits, water rights and stock and all fixtures now or hereafter a part of the
property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this
Security Instrument as the "Property."

     BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and
convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend
generally the title to the Property against all claims and demands, subject to any encumbrances of record.

FHA Nevada Deed of Trust - 12/93
HUD-92105T-1   R 2/98   Page 1 of 4



THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:

**UNIFORM COVENANTS.**

**1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

**2. Monthly Payments of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under Paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Sec. 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b) and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b) and (c).

**3. Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

FIRST, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

SECOND, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

THIRD, to interest due under the Note;

FOURTH, to amortization of the principal of the Note;

FIFTH, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payments for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in Paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in Paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrowers Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless the Secretary determines this requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lenders of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the property if the property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in Paragraph 3, and then to prepayment of principal.

Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in Paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

20010105

9. Grounds for Acceleration of Debt.

(a) Default. Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) Sale Without Credit Approval. Lender shall, if permitted by applicable law and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) No Waiver. If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) Regulations of HUD Secretary. In many circumstances regulations issued by the Secretary will limit Lender's right in the case of payment defaults to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) Mortgage Not Insured. Borrower agrees that should this Security Instrument and the Note secured thereby not be eligible for insurance under the National Housing Act within sixty days from the date hereof, Lender may, at its option and, notwithstanding anything in Paragraph 9, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to sixty days from the date hereof, declining to insure this Security Instrument and the Note secured thereby, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. Reinstatement. Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers. The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9.b. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the term of this Security Instrument or the Note without that Borrower's consent.

13. Notices. Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. Governing Law; Severability. This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

15. Borrower's Copy. Borrower shall be given one conformed copy of this Security Instrument.

16. Hazardous Substances. Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS

17. Assignment of Rents. Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower, (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

18. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold, and shall cause such notice to be recorded in each county in which any part of the Property is located. Lender shall mail copies of the notice as prescribed by applicable law to Borrower and to the persons prescribed by applicable law. Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law. After the time required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act")[12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

19. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty and without charge to the person or persons legally entitled to it. Such person or persons shall pay recordation costs.

20. Substitute Trustee. Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

21. Waiver of Homestead. Borrower waives all right of homestead exemption in the Property.

22. Assumption Fee. If there is an assumption of this loan. Lender may charge an assumption fee of U S. $500.00

Riders to this Security Instrument. If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were in a part of this Security Instrument. [Check applicable box(es)]

[X] Condominium Rider        [ ] Graduated Payment Rider       [ ] Growing Equity Rider
[ ] Planned U...t Development Rider   [ ] Other [Specify];      [X] Adjustable Rate Rider

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in the Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_____ (Seal)        _____ (Seal)
GUY K NGUYEN          -Borrower        THOU C NGUON-NGUYEN         -Borrower

_____ (Seal)        _____ (Seal)
                      -Borrower                                      -Borrower

Page 4 of 4

STATE OF NEVADA.                                County ss:   CLARK
On this       14th  day of       April  . 2000 . personally appeared before me, the undersigned, a notary public in and for the County and State aforesaid,
GUY K NGUYEN and THOU C NGUON-NGUYEN
known to me to be the person described in and who executed the within and foregoing instrument, and who acknowledged to me that  they  executed the same freely and voluntarily and for the uses and purposes therein mentioned
IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal at my office in said county of . the day and year in this Certificate first above written.

My Commission expires: 2-4-03

NANCY LOBECK
Notary Public, State of Nevada
Appointment No 99-51475-1
My Appt Expires Feb 4 2003

Notary Public
County of Clark          . State of Nevada

WHEN RECORDED MAIL TO:

ATTN: Carl F. Johnson

# FHA MULTISTATE ADJUSTABLE RATE RIDER

THIS ADJUSTABLE RATE RIDER is made this __14th__ day of __April, 2000__ , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to __First Security Bank, N.A.__ (the "Lender") of the same date and covering the property described in the Security Instrument and located at:
__1881 W ALEXANDER RD #2087, NORTH LAS VEGAS, NV 89032__
[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in this Security Instrument, Borrower and Lender further covenant and agree as follows:

INTEREST RATE AND MONTHLY PAYMENT CHANGES

(A) Change Date
The interest rate may change on the first day of __July, 2001__ , and that day of each succeeding year. "Change Date" means each date on which the interest rate could change.

(B) The Index
Beginning with the first Change date, the interest rate will be based on an index. "Index" means the weekly average yield on United State Treasury Securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. "Current Index" means the most recent Index figure available 30 days before the Change Date. If the Index (as defined above) is no longer available, Lender will use as a new Index any index prescribed by the Secretary. As used in this Rider, "Secretary" means the Secretary of Housing and Urban Development or his or her designee. Lender will give Borrower notice of the new Index.

(C) Calculation of Interest Rate Changes
Before each Change Date, Lender will calculate a new interest rate by adding a margin of __Two and Three-Fourths__ percentage points ( __2.7500 %__ ) to the current Index and rounding the sum to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Paragraph (D) of this Rider, this rounded amount will be the new interest rate until the next Change Date.

(D) Limits on Interest Rate Changes
The interest rate will never increase or decrease by more than one percentage point (1.0%) on any single Change Date. The interest rate will never be more than five percentage points (5.0%) higher or lower than the initial interest rate.

(E) Calculation of Payment Change
If the interest rate changes on a Change Date, Lender will calculate the amount of monthly payment of principal and interest which would be necessary to repay the unpaid principal balance in full at the maturity date at the new interest rate through substantially equal payments. In making such calculation, Lender will use the unpaid principal balance which would be owed on the Change Date if there had been no default in payment on the Note, reduced by the amount of any prepayments to principal. The result of this calculation will be the amount of the new monthly payment of principal and interest.

Page 1 of 2 Pages
FHA ARD (01/97) /1.5/99
0007288871



(F) **Notice of Changes**

Lender will give notice to Borrower of any change in the interest rate and monthly payment amounts. The notice must be given at least 25 days before the new monthly payment amount is due, and must set forth (i) the date of the notice, (ii) the Change Date, (iii) the old interest rate, (iv) the new interest rate, (v) the new monthly amount, (vi) the Current Index and date it was published, (vii) the method of calculating the change in monthly payment amount, and (viii) any other information which may be required by law from time to time.

(G) **Effective Date of Changes**

A new interest rate calculated in accordance with Paragraphs (C) and (D) of this Rider will become effective on the Change Date. Borrower shall make a payment in the new monthly amount beginning on the first payment date which occurs at least 25 days after Lender has given Borrower the notice of changes required by Paragraph (F) of this Rider. Borrower shall have no obligation to pay any increase in the monthly payment amount calculated in accordance with Paragraph (E) of this Rider for any payment date occurring less than 25 days after Lender has given the required notice. If the monthly payment amount calculated in accordance with Paragraph (E) of this Rider decrease, but Lender failed to give timely notice of the decrease and Borrower made any monthly payment amounts exceeding the payment amount which should have been stated in a timely notice, then Borrower has the option to either (i) demand the return to Borrower of any excess payment, with interest thereon at the Note rate (a rate equal to the interest rate which should have been stated in a timely notice), or (ii) request that any excess payment, with interest thereon at the Note rate, be applied as payment of principal. Lender's obligation to return any excess payment with interest on demand is not assignable even if the Note is otherwise assigned before the demand for return is made.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 and 2 of this Adjustable Rate Rider.

_____ (Seal)
                                               Borrower

_____ (Seal)
                                               Borrower

_____ (Seal)
QUY K NGUYEN                                 Borrower

_____ (Seal)
THOU C NGUON-NGUYEN                   Borrower

_____ (Seal)
                                               Borrower

_____ (Seal)
                                               Borrower

00D7202871



# FHA CONDOMINIUM RIDER

THIS CONDOMINIUM RIDER is made this **14th** day of **April, 2000** and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to

**First Security Bank, N.A.**

("Lender") of the same date and covering the property described in the Security Instrument and located at:

**1881 W ALEXANDER RD 02087, NORTH LAS VEGAS, NV  89032**

[Property Address]

The Property Address includes a unit in, together with an undivided interest in the common elements of, a condominium project known as

**Villas at Hidden Canyon - Unit 2 (dba:  Village)**

[Name of Condominium Project]

("Condominium Project"). If the owners association or other entity which acts for the Condominium Project ("Owners Association") holds title to property for the benefit or use of its members or shareholders, the Property also includes Borrower's interest in the Owners Association and the uses, proceeds and benefits of Borrower's interest.

**CONDOMINIUM COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A  So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring all property subject to the condominium documents, including all improvements now existing or hereafter erected on the Property, and such policy is satisfactory to Lender and provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire and other hazards included within the term "extended coverage," and loss by flood, to the extent required by the Secretary, then, (i) Lender waives the provision in Paragraph 2 of this Security Instrument for the monthly payment to Lender of one-twelfth of the yearly premium installments for hazard insurance on the Property, and (ii) Borrower's obligation under Paragraph 4 of this Security Instrument to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owner's Association policy. Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage and of any loss occurring from a hazard. In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the condominium unit or to the common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to the entity legally entitled thereto

B.  Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the condominium project

C.  If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Condominium Rider.

_____ (SEAL)
**QUY K NGUYEN**                  Borrower

_____ (SEAL)
**THOU C NGUON-NGUYEN**           Borrower

20000414
00305
20091005
.01146

# LEGAL DESCRIPTION

Order No.:

The land referred to herein is situated in the State of Nevada, County of CLARK, described as follows:

A CONDOMINIUM COMPOSED OF:

PARCEL I (COMMON ELEMENT):

An undivided 1/8th interest as tenant-in-common in the Common Element Phase 6 of VILLAS AT HIDDEN CANYON - UNIT 2 (a common interest condominium development), as shown by map thereof on file recorded December 31, 1998 in Book 87 of Plats, Page 70, and amended by Certificates of Amendment recorded APRIL 20, 1999 in Book 990420, as Document No. 00644 and AUGUST 16, 1999 in Book 990816, as Document No. 00873, Official Records, in the Office of the County Recorder of Clark County, Nevada.

EXCEPTING THEREFROM THE FOLLOWING:

All Living Units in Phase 6 of VILLAS AT HIDDEN CANYON - UNIT 2 (a common interest condominium development), recorded in the Office of the County Recorder of Clark County, Nevada, on December 31, 1998 in Book 87 of Plats, Page 70.

AND RESERVING THEREFROM:

The right to possession of all those areas designated as Limited Common Element as shown upon the Condominium Plat referred to above;

AND FURTHER RESERVING THEREFROM for the benefit of the Owners of Condominiums in Phases 1 through 5 and 7 through 12, non-exclusive easements on, over, and under the Common Elements and Private Drives and P.U.E., as defined and shown upon the Condominium Plat referred to above for ingress and egress, and subject to the terms and as more particularly set forth in the Declaration of Covenants, Conditions and Restrictions recorded May 23, 1997 in Book 970523, as Document No. 01065, and by First Amendment to Declaration recorded July 26, 1999 in Book 990726 as Document No. 01462, and by First Supplement to Exhibit "B" to Declaration recorded August 9, 1999 in Book 990809, as Document No. 01081 (hereafter "Declaration"), excepting Buildings and any portion thereof which is designated as a Limited Common Element.

Continued on next page

-1-

**STEWART TITLE**
Guaranty Company

FEB-22-01  10:47    FROM-STEWART TITLE H.H.                1-702-791-7633        T-637  P.10/11  F-833

LEGAL DESCRIPTION - continued

PARCEL II (CONDOMINIUM UNIT):

Condominium Unit 2087, in Building V, as shown upon the
Condominium Plat referred to above.

PARCEL III (LIMITED COMMON ELEMENT):

The exclusive right to use, possession, and occupancy of those
portions of the Common Element being described upon the Plat
and in the "Declaration" as Porches, Balconies, Patios, and/or
Exterior Stairways, HVAC and Parking Stall (Limited Common
Element), which are appurtenant to and for the exclusive use of
Parcel II.

PARCEL IV (PHASED AREAS):

A non-exclusive easement for ingress and egress, over and under
the Common Elements and Private Drives and P.U.E. of Phases 1
through 5 and 7 through 12, which easement is appurtenant to
Parcels I, II, and III described above.  This easement shall be
effective only until recordation prior to expiration of the
right to annex by a Declaration of Annexation declaring Phases
1 through 5 and 7 through 12 to be subject to the Declaration
to which reference is heretofore made or a separate
Declaration, which requires the Owners of a Condominium in
Phases 1 through 5 and 7 through 12 to be members of the
Association.

PARCEL V:

A non-exclusive easement for ingress and egress, over and under
the Common Elements and Private Drives and P.U.E of the Amended
Plat of Villas at Hidden Canyon - Unit 1 (a common interest
condominium development) as shown by map thereof on file in
Book 81 of Plats, Page 70 and in Book 85 of Plats, Page 92, in
the Office of the County Recorder of Clark County, Nevada,
which easement is appurtenant to Parcels I, II, and III
described above.

PARCEL VI (COMMON RECREATIONAL AREA):

A non-exclusive easement on and over the Common Recreational
Area (Common Element "A" (CE "A") as shown on the Amended Plat

Continued on next page

-2-

20000414
02396
20001005
01146

## LEGAL DESCRIPTION - continued

of Villas Hidden Canyon - Unit 1 (a common interest condominium development) as shown by map thereof on file in Book 81 of Plats, Page 70, in the Office of the County Recorder of Clark County, Nevada) for access, use, occupancy, enjoyment, ingress, egress, and use of the amenities located thereon, subject to the terms and provisions of the Declaration to which reference is heretofore made. This easement is appurtenant to Parcels I, II, and III herein described. The Common Recreational Area is for the use of Owners and guests of the Units and are subject to the Declaration rules and regulations of the Association and are not for the use of the general public.

-3-

RE-RECORDED

CLARK COUNTY, NEVADA
JUDITH A. VANDEVER, RECORDER
RECORDED AT REQUEST OF
STEWART TITLE OF NEVADA
10-05-2000 17:45 BJR 1P
OFFICIAL RECORDS
BOOK 20001005 INST. 01146
FEE 16.00 RPTT .00

CLARK COUNTY, NEVADA
JUDITH A. VANDEVER, RECORDER
RECORDED AT REQUEST OF
STEWART TITLE OF NEVADA
04-14-2000 16:19 JS
OFFICIAL RECORDS
BOOK 20000414 INST. 02396
FEE 16.00 RPTT

 

# FHA ADJUSTABLE RATE NOTE

State of **NEVADA**

| FHA Case No. |
| **332-3428925-731** |

**April 14**  ,  **2000**

**1881 W ALEXANDER RD #2087, NORTH LAS VEGAS, NV  89032**
[Property Address]

## 1. PARTIES
"Borrower" means each person signing at the time of this Note ,and the person's successors and assigns.
"Lender" means **First Security Bank, N.A.**
and its successors and assigns.

## 2. BORROWER'S PROMISE TO PAY; INTEREST
In return for a loan received from Lender, Borrower promises to pay the principal sum of
**Seventy-Eight Thousand, Six Hundred Sixty-Three and No/100 --------------------**Dollars
(U.S. $    **78,663.00** ) plus interest, to the order of Lender. Interest will be charged on unpaid
principal, from the date of disbursement of the loan proceeds by Lender, at a rate of
**Seven and One-Half**            percent        (     **7.5000**%) per year.
The interest rate may change in accordance with Paragraph 5(C) of this Note.

## 3. PROMISE TO PAY SECURED
Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is
dated the same date as this Note and called the "Security Instrument." That Security Instrument protects the
Lender from losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT
### (A) Time
Borrower shall make a payment of principal and interest to Lender on the first day of each month
beginning on **June**            ,  **2000**  . Any principal and interest remaining on the first day of
**May**        ,**2030** , will be due on that date, which is called the maturity date.

### (B) Place
Payment shall be made at    **P.O. Box 410430  Salt Lake City, UT  84141-0430**
or at such other place as Lender may designate in writing by notice to Borrower.

### (C) Amount
Initially, each monthly payment of principal and interest will be in the amount of
U.S.$    **550.03**. This amount will be part of a larger monthly payment required by the Security Instrument
that shall be applied to principal, interest and other items in the order described in the Security Instrument.
This amount may change in accordance with Paragraph 5(E) of this Note.

## 5. INTEREST RATE AND MONTHLY PAYMENT CHANGES
### (A) Change Date
The interest rate may change on the first day of **July**        ,**2001**    and on that day of each
succeeding year.  "Change Date" means each date on which the interest rate could change.

### (B) The Index
Beginning with the first Change Date, the interest rate will be based on an Index.  "Index"  means

EXHIBIT B

0007288871

means the weekly average yield on United States Treasury Securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. "Current Index" means the most recent Index figure available 30 days before the Change Date. If the Index (as defined above) is no longer available, Lender will use as a new Index any index prescribed by the Secretary (as defined in Paragraph 7(B)). Lender will give Borrower notice of the new Index.

### (C) Calculation of Interest Rate Changes

Before each Change Date, Lender will calculate a new interest rate by adding a margin of **Two and Three-Fourths** percentage points **2.7500** %) to the Current Index and rounding the sum to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Paragraph 5(D) of this Note, this rounded amount will be the new interest rate until the next Change Date.

### (D) Limits on Interest Rate Changes

The existing interest rate will never increase or decrease by more than one percentage point (1.0%) on any single Change Date. The interest rate will never be more than five percentage points (5.0%) higher or lower than the initial interest rate stated in Paragraph 2 of this Note.

### (E) Calculation of Payment Change

If the interest rate changes on a Change Date, Lender will calculate the amount of monthly payment of principal and interest which would be necessary to repay the unpaid principal balance in full at the maturity date at the new interest rate through substantially equal payments. In making such calculation, Lender will use the unpaid principal balance which would be owed on the Change Date if there had been no default in payment on the Note, reduced by the amount of any prepayments to principal. The result of this calculation will be the amount of the new monthly payment of principal and interest.

### (F) Notice of Changes

Lender will give notice to Borrower of any change in the interest rate and monthly payment amount. The notice must be given at least 25 days before the new monthly payment amount is due, and must set forth (i) the date of the notice, (ii) the Change Date, (iii) the old interest rate, (iv) the new interest rate, (v) the new monthly payment amount, (vi) the Current Index and the date it was published, (vii) the method of calculating the change in monthly payment amount, and (viii) any other information which may be required by law from time to time.

### (G) Effective Date of Changes

A new interest rate calculated in accordance with Paragraphs 5(C) and 5(D) of this Note will become effective on the Change Date. Borrower shall make a payment in the new monthly amount beginning of the first payment date which occurs at least 25 days after Lender has given Borrower the notice of changes required by Paragraph 5(F) of this Note. Borrower shall have no obligation to pay any increase in the monthly payment amount calculated in accordance with Paragraph 5(E) of this Note for any payment date occurring less than 25 days after Lender has given the required notice. If the monthly payment amount calculated in accordance with Paragraph 5(E) of this Note decreased, but Lender failed to give timely notice of the decrease and Borrower made any monthly payment amounts exceeding the payment amount which should have been stated in a timely notice, then Borrower has the option to either (i) demand the return to Borrower of any excess payment, with interest thereon at the Note rate (a rate equal to the interest rate which should have been stated in a timely notice), or (ii) request that any excess payment, with interest thereon at the Note rate, be applied as payment of principal. Lender's obligation to return any excess payment with interest on demand is not assignable even if this Note is otherwise assigned before the demand for return is made.

## 6. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month.

## 7. BORROWER'S FAILURE TO PAY

### (A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as




FHA Multistate Adjustable Rate Note

FHAARN2

 

0007288871

described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of **Four** percent ( **4.00** %) of the overdue amount of each payment.

### (B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

### (C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorney's fees for enforcing this Note. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 8. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 9. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 10. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, borrower accepts and agrees to the terms and covenants contained in this Note.

_____ (SEAL)
QUY K NGUYEN                       Borrower

_____ (SEAL)
THOU C NGUON-NGUYEN               Borrower

PAY TO THE ORDER OF
WELLS FARGO HOME MORTGAGE, INC.
WITHOUT RECOURSE
FIRST SECURITY BANK
BY
SHERI L. WIRTH, ASST. VICE PRESIDENT

WITHOUT RECOURSE
PAY TO THE ORDER OF

WELLS FARGO HOME MORTGAGE, INC.
F/K/A NORWEST MORTGAGE, INC.

By _____
Robert Kozlitz
Assistant Secretary

FHA Multistate Adjustable Rate Note                                    FHAARN3

RECORDING REQUESTED BY:

WHEN RECORDED MAIL TO:
Tiffany & Bosco, P.A.
2525 East Camelback Road, Suite 300
Phoenix, AZ 85016

T&B NO.: 10-71293
LOAN NO.: 5678132
MIN NO.:
APN: TBD

## CORPORATION ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned corporation hereby grants, assigns and transfers to **Wells Fargo Bank, N.A.** all beneficial interest under that certain Deed of Trust dated **04/14/2000** executed by **Quy K. Nguyen and Thou C. Nguon-Nguyen, Husband and Wife** Trustor, to **Stewart Title** Trustee, and recorded on **04/14/00** as Recording No./Book-Page **200004140002396** of Official Records of **Clark County, NV** describing the land therein:

**AS PER DEED OF TRUST MENTIONED ABOVE.**

Together with the Note or Notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust

Effective Date: March 25, 2010

First Security Bank, N.A.

Mark S. Bosco, Attorney at Law
By Limited Power of Attorney

STATE OF <u>ARIZONA</u>
COUNTY OF <u>MARICOPA</u>

On April 2, 2010, before me, **Dawn Blanton**, a Notary Public for said State, personally appeared **Mark S. Bosco** personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of
the State of Arizona that the foregoing is true and correct.
WITNESS my hand and official seal.

Signature

OFFICIAL SEAL
DAWN BLANTON
Notary Public - State of Arizona
MARICOPA COUNTY
My Comm. Expires July 2, 2011